UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TERRY HARRIS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action Number** |
| v. ) | **5:18-CV-01270-AKK** |
| ) | |
| **UNIVERSAL LOGISTICS, et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Terry Harris filed this lawsuit against Logistics Insight Corporation ("Logistics Insight"), incorrectly designated as Universal Logistics, and several of its employees including, Justin Evans, Chris Pepsin, Crystal Dixon, and Matt Muesch (hereinafter collectively the "Individual Defendants"), alleging discrimination and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* ("ADA") and race discrimination under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e-2 ("Title VII"). Doc. 1. Defendants have moved for summary judgment, doc. 8, and Harris responded with what appears to be a new claim for discrimination against separate non-parties, doc. 16, and by filing two separate documents tilted as motions for summary judgment, docs. 17 and 20. Defendants replied in support of their initial motion and

1

responded to Harris's motions for summary judgment. Docs. 19; 21; 23. Based on the evidence and consideration of relevant law, Defendants' motion, doc. 9, is due to be granted, and Harris's motions are due to be denied.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

2

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

**II. FACTUAL BACKGROUND**

The following facts reflect an assessment of the record in the light most favorable to Harris. Since 2016, Harris, an African American man, has worked for Logistics Insight in Huntsville, Alabama as a forklift operator and auditor. Docs. 1 at 8; 9 at 2. On March 3, 2017, Harris sustained an injury when he fell out of a

trailer truck onto a loading dock. Docs. 1 at 8; 8-1 at 2; 9 at 2; 17 at 2. Harris maintains that although he filed an incident report that day with human resource representative Crystal Dixon, Dixon denied him permission to seek treatment despite indications that Harris was bleeding and in pain. Doc. 1 at 8. Harris contends that his supervisor, Justin Evans, gave him two options—continue working or termination. *Id.* Harris worked for seventeen days in severe pain until Dixon instructed him to go to the hospital. *Id.* Although Defendants deny this account, *see* docs 8-1 at 2, the parties agree that Harris eventually received medical treatment and was placed on medical leave from late March until mid-December 2017. Docs. 1 at 8; 8-1 at 2-3; 17 at 3.

Harris's physician released Harris to return to work with lifting restrictions beginning on December 12, 2017. Docs. 1 at 8; 8-1 at 3; 17 at 2-3. Within a week of his return, Harris maintains that Logistics Insight disciplined him and prevented him from attending physical therapy sessions. Doc. 20. At some point, Dixon and Pepsin (a supervisor) wrote Harris up for "no call/no show." Docs. 1 at 8; 17 at 2. In addition, Evans allegedly discharged Harris over the phone due to misconduct[1] and instructed Harris to immediately return to work and gather his belongings.

---

[1] The misconduct purportedly included moving materials to incorrect locations, leaving an iPad in his locker, failing to audit correctly, losing inventory parts, unsatisfactory work quality, failure to follow instructions, and leaving work without clocking out. Doc. 1 at 11.

Doc. 17. When Harris arrived at work, however, Evans rescinded the discharge. Doc. 1 at 8.

Defendants assert that they have no records of reprimanding Harris for "no call no show" and Dixon denies ever issuing any reprimand. Docs. 8-1 at 3; 9 at 3. Both parties submitted documentation of three "Employee Corrective Action" forms indicating that Harris "missed scans on critical parts" on December 17, "moved material to incorrect locations" on December 19, and "failed to turn in company property before the end of a shift" on December 19. Docs. 9 at 3-4; 8-1 at 5-7; 20 at 3-9. However, Logistics Insight denies it discharged Harris and notes that Harris's hourly pay rate increased and that Harris is still employed with the company. Doc. 8-1 at 5-7. Indeed, Harris concedes in his declaration opposing summary judgment that he is "an employee of [Logistics Insight]" and is "employed by Logistics Insight Corporation as an Auditor." Docs. 16 at 2; 17 at 2.

### III. ANALYSIS

Before turning to Defendants' summary judgment motion, doc. 9, the court will address three initial matters regarding a few of Harris's incognizable claims. First, "[i]ndividual capacity suits under Title VII [and the ADA] are . . . inappropriate" because "Title VII [and the ADA are] against the employer, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also Albra v.*

*Advan, Inc.*, 490 F.3d 826 (11th Cir. 2007) (holding that individual liability is precluded for violations of the ADA's employment discrimination provision). Therefore, the Individual Defendants' motion is due to be granted because "the proper method for a plaintiff to recover under Title VII [and the ADA] is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby,* 931 F.2d at 772.

Second, Harris's claims in this lawsuit are limited to those he raised in his EEOC charge, i.e. race discrimination and disability discrimination and retaliation claims.[2] Doc. 1 at 8. This is because "[a]n employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act." *Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1339–40 (11th Cir. 2017) (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (Title VII) and *Maynard v.*

---

[2] Although Harris also alleges race discrimination in his EEOC charge, the charge limited his claim to the denial of medical relief after his workplace injury and to the discipline he received when he returned from medical leave. Doc. 1 at 8. However, in the complaint he filed in this court, he only describes the alleged racially discriminatory incidents in a four page letter that he attached to his "Complaint for Employment Discrimination." *Id.* at 5, 10-13. This letter includes allegations that he never raised to the EEOC. Moreover, the letter is not proper evidence for summary judgment purposes. *Ellis*, 432 F.3d at 1326 (holding that "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion"). Rule 56(c) of the Federal Rules of Civil Procedure dictates that parties can assert facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Because Harris's race allegations in his complaint are not supported by any affidavit or declaration, the court limits its review of the record to the disability allegations which are supported by the initial EEOC charge, declarations, and employee file, including Harris's employee corrective action forms. Docs. 1 at 8; 17, 20.

*Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (ADA)). Moreover, a failure to mention specific claims or events that gave rise to that claim "would otherwise preclude the EEOC from performing its role in obtaining voluntary compliance and promoting conciliation efforts on that claim." *Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 771-72 (11th Cir. 2017). Thus, the court need not consider the new claims Harris raised in his complaint, doc. 1, or response opposing summary judgment, doc. 16.

Third, although "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), the court may not "serve as de facto counsel for a party." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). Relevant here, Harris's response to Defendants' motion raises new allegations regarding false statements and discrimination that are appropriate for a new claim against the non-parties Athens Thrift Store, Joanna Thompson, and Ron Dabbs. Doc. 16 at 1-2. Also, in his two summary judgment motions, Harris contends that there are "genuine issue[s]" and that he is "entitled to judgment as a matter of law." Docs. 17; 20. Because Harris's motions actually outline his reasons for why he believes the court should deny Defendants' motion, the court will treat his motions as responses in opposition to Defendants' motion under Rule

7

56(c)(3), which allows the court to "consider other materials in the record" including his attached exhibits and declarations. Docs. 17 at 2-3; 20 at 3-9.

Having addressed these preliminary issues, the court will now turn to Harris's three surviving claims beginning with the Title VII race discrimination claim in Section A, ADA discrimination claim in Section B, and ADA retaliation claim in Section C.

**A. Title VII Race Discrimination Claim**

Harris alleges that Logistics Insight discriminated against him based on his race when it issued him three corrective actions, wrote him up for "no call/no shows," and discharged him. Doc. 1 at 12-13. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). "[A]n adverse employment action motivated by both legal and illegal reasons constitutes actionable discrimination under Title VII." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1236 (11th Cir. 2016) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). Discrimination claims brought under Title VII are typically categorized as either mixed-motive or single-motive claims. *Id.* Whereas single-motive (or "pretext") claims "require a showing that bias was the true reason for the adverse action," mixed motive claims require a showing that an "illegal bias, such as bias based on sex or gender, 'was a

motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Id.* at 1235 (quoting 42 U.S.C. § 2000e–2(m)).

Regardless of the theory Harris is asserting, Harris has failed to make the requisite showing because he provides no support for his race discrimination claims other than his complaint, and the exhibits and declaration he offers only support his ADA disability claims. Docs. 1; 17; 20. Although he alleges many incidents of race discrimination in his complaint, his EEOC charge where he declares "I am a Black individual with a disability" is the only factual support he offers for the race discrimination claim. Doc. 1 at 8. At the summary judgment stage, such conclusory statements are insufficient without citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Accordingly, Harris failed to make out a *prima facie* case under Title VII and offers no "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker." *Smith v. Lockheed–Martin, Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011). Therefore, his race discrimination claim fails. *See Celotex*, 477 U.S. at 318 ("The moving party is entitled to a judgment as a matter of law [when] the nonmoving

party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.").

### B. ADA Discrimination

Harris also asserts a claim for disability discrimination based on the reprimands and his purported discharge. Doc. 1 at 8, 10-11. The ADA forbids covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112(a) (2000). Where, as here, Harris does not allege direct evidence of discrimination, the court will analyze his claim under the *McDonnell Douglas* burden-shifting framework. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). To establish a *prima facie* case of ADA discrimination, Harris must show: (1) he had a real or perceived disability; (2) he was otherwise qualified to perform the essential functions of the job; and (3) his employer discriminated against him based on his disability. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002). Logistics Insight contends that Harris never offered factual support or identified a disability in his complaint or EEOC charge. Docs. 9 at 8-13; 21 4-10. The court agrees.

It is undisputed that Harris sustained an injury at the worksite. Still, "[n]ot all impairments automatically qualify individuals for protection under federal disabilities law." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1228

(S.D. Fla. 2010). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Harris's proof of disability includes conclusory statements without factual support, such as "I am a Black individual with a disability," and descriptions of a hospital visit, pain, therapy, and work restrictions. Docs. 1 at 8; 17 at 3. However, based on the presented evidence, the court cannot discern whether Harris's injury was "short-term, temporary, and contemporaneous with [his] treatment," or whether he "suffer[ed] from any long-term or permanent side-effects of sufficient severity to constitute a disability." *Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1315 (11th Cir. 2007). Harris has presented absolutely no evidence that suggests that he had an impairment that substantially limited any major life activities. At best, his injury left him temporarily incapacitated, and a "temporary inability to work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act." *See Sutton v. Lader,* 185 F.3d 1203, 1209 (11th Cir. 1999).

Moreover, Harris has offered no record of a disability. A person has a record of a disability if "a record relied upon by an employer indicates that the individual has or had a substantially limiting impairment." 29 C.F.R. Pt. 1640 App. §

11

1630.2(k). Both parties agree that Harris was placed on workers' compensation leave, he attended physical therapy, and his doctor allowed him to return to work ultimately with a light duty restriction. Docs. 1 at 7; 8-1 at 2-3; 20 at 3-4. However, "a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, does not constitute a disability under the [ADA]." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1222 (11th Cir. 2000). Without factual support such as affidavits or medical records based on objective criteria, Harris fails to demonstrate that his employer believed he had a record of disability. *See Carr v. Publix Super Markets, Inc.,* 170 F. App'x 57, 61 (11th Cir. 2006) ("Neither the x-rays or lifting restriction set out in the physician's note presented by [the employee] to Publix show a substantial limitation sufficient to establish a record of a disabling impairment").

Finally, to be regarded as disabled, an employer must "believe either that [an employee] has a substantially limiting impairment that one does not have or that [an employee] has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Couts v. Beaulieu Grp., LLC,* 288 F. Supp. 2d 1292, 1305 (N.D. Ga. 2003) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999)). None of the evidence that Harris puts forth indicates that any misperception existed on Logistics Insight's part with regard to his injury. *McCollough v. Atlanta Beverage Co.*, 929 F. Supp. 1489, 1498 (N.D. Ga. 1996)

(noting that the defendant did not regard plaintiff as disabled simply because defendant discontinued plaintiff's lifting duties as result of representations made by plaintiff and plaintiff's physician); *see also Couts,* 288 F. Supp. 2d at 1304 ("[A]wareness, without more, is not sufficient to show that Defendant regarded Plaintiff as disabled for purposes of the ADA.").

In short, Harris has failed to show that he is disabled under any of the three definitions. Therefore, his ADA disability claim fails.

**C. ADA Retaliation**

Finally, Harris alleges that Logistics Insight retaliated against him for engaging in protected activity in violation of the ADA. To establish a *prima facie* case of retaliation, Harris must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quotations omitted). Logistics Insight maintains that Harris fails to meet all three of these prongs.

First, contrary to Logistics Insight contention that Harris did not engage in a protected activity, doc. 9 at 10, it is well established that protected activity includes requests for a workplace accommodation. *Meyer v. Sec'y, U.S. Dep't of Health & Human Servs.*, 592 F. App'x 786, 792 (11th Cir. 2014); *see also Collins v. Compass Grp., Inc.*, 965 F. Supp. 2d 1321 (N.D. Ala. 2013) (workplace

accommodation request for dialysis appointment was protected activity); *McClain v. Tenax Corp.*, 304 F. Supp. 3d 1195, 1205 (S.D. Ala. 2018) (repeatedly informing managers about difficult physical requirements of the job position was protected activity). Moreover, the facts before the court belie Logistics Insight contention that Harris "did not ask for an accommodation." Doc. 9 at 10. Specifically, the declaration of Harris indicates that "Harris was released by his physician with lifting restrictions and he returned to work" the next day. Doc. 9-1 at 3. Also, Harris's EEOC charge states that he "returned to work with restriction of light duty and intermediate time off for physical therapy." Doc. 1 at 8. Based on these contentions, Harris's triggering act for engagement in protected activity occurred when he requested and received workplace accommodations for a light duty schedule and leave to attend physical therapy.

Turning to the next prong, Harris maintains that Defendants subjected him to adverse employment actions by: (i) issuing him three reprimands/corrective action forms; (ii) denying him time off for therapy; (iii) writing him up for "no call/no show" and (iv) wrongfully discharging him and immediately rescinding the discharge. Docs. 1 at 8; 17 at 2; 20. Both parties concede and provide documentation that Harris received at least three "employee written correction" forms less than a week after he returned to work with light duty restrictions. To state a valid claim, however, Harris must demonstrate that these corrective actions

resulted in "a significant change in employment status, such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). A review of the three reprimands shows no adverse consequence. Although two reprimands state that suspension is the "consequence should the incident occur again," Harris was never suspended. Doc. 20 at 4-9. In that respect, to the extent that Harris argues these written reprimands would have led to suspensions or a "progressively higher category of violations," there is no adverse action because it is "undisputed that [Harris] has received no further discipline." *Houston v. City of Atlanta*, No. 115CV03112TWTWEJ, 2017 WL 1380516, at *5 (N.D. Ga. Feb. 21, 2017), *report and recommendation adopted*, No. 1:15-CV-3112-TWT, 2017 WL 1364866 (N.D. Ga. Apr. 13, 2017), *aff'd*, 735 F. App'x 701 (11th Cir. 2018). Moreover, Defendants maintain, and Harris does not dispute, that these reprimands led to "no reduction in pay" or "affect[ed] [Harris's] ability to obtain any future pay raises." Doc. 8-1 at 4. In fact, Harris received a pay rate raise in April 2017 after his injury. *Id.* Therefore, because the record shows that Harris "was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location in the [workplace], did not have his hours or work changed or altered in any way, and that he was not denied any pay raise or promotion as a result of these reprimands," *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441,

447 (3d Cir. 2011), Harris has failed to demonstrate that these written reprimands constituted an adverse employment action. *See also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (negative performance evaluations alone are not adverse employment actions); *Wallace v. Ga. Dep't of Transp.*, 212 Fed.Appx. 799, 801 (11th Cir. 2006) (written reprimands without more do not constitute an adverse employment actions).

As for the alleged failure to allow Harris to attend physical therapy, Harris's "Excused Time Off Request Forms" indicate that he sought to take the *entire* day off for therapy on two different days, and Logistics Insight denied his request noting that "per instructions you are to be at work before [and] after physical therapy." Doc. 20 at 3-4. In other words, it seems Logistics Insight objected to Harris's request to take the entire day off rather than be excused solely for the hours of his therapy sessions. Even if Harris is correct that Logistics Insight's response constituted a denial of his request to attend physical therapy, "the mere denial of a request for a reasonable accommodation cannot be an adverse employment action giving rise to a separate ADA retaliation claim." *McClain v. Tenax Corp.*, 304 F. Supp. 3d 1195, 1206 (S.D. Ala. 2018) (noting that employees would be "able to 'double dip' by asserting both ADA failure-to-accommodate and ADA retaliation claims").

Regarding workplace absences, Harris maintains that Dixon and Pepsin issued several "no call/no show" write-ups but he offers no evidence of how they led to "any [adverse] action—including termination, demotion, or even a reprimand—that could have seriously affected [Harris's] employment." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) (finding that a supervisor's threat to an employee's job over a "no call-no show" did not rise to an adverse employment action without evidence of a concrete materially adverse effect).

Finally, with respect to his purported termination, as Harris tells it, the supervisor at issue rescinded the discharge the same day before Harris clocked out of work. Doc. 1 at 8. In other words, the purported termination had no adverse effect on Harris. *See Stavropoulos v. Firestone,* 361 F.3d 610, 617 (11th Cir. 2004), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (an overridden vote to terminate plaintiff's employment that resulted in no pay or benefits loss was not an adverse action); *Pennington v. City of Huntsville,* 261 F.3d 1262, 1263 (11th Cir. 2001) ("[T]he decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action").

Because there is no evidence that Harris suffered an adverse employment action, the court finds that Harris has failed to demonstrate a prima facie case of

ADA retaliation.³ *Hall v. Alabama State Univ.*, No. 2:16-CV-593-GMB, 2018 WL 4088050, at *6–7 (M.D. Ala. Aug. 27, 2018) (granting summary judgment on retaliation claim because the employee offered insufficient evidence of an adverse employment action).

## IV. CONCLUSION

For these reasons, Defendants' summary judgment motion, doc. 8, is due to be granted. Harris's motions for summary judgment, docs. 17 and 20, are due to be denied. A separate order will be issued.

**DONE** the 21st day of November, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

³ Even if the court were to assume that Harris suffered an adverse employment action, Harris has "failed to establish requisite causation between the adverse action and the protected expression." *Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819 (11th Cir. 2005). He offers no factual support that the decision maker behind the purported adverse actions had knowledge of the protected activity. *See Shannon v. Bellsouth Telecomms, Inc.,* 292 F.3d 712, 716 (11th Cir. 2002) ("To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."). Moreover, "[t]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection…" *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.2000).